**HAGNER & ZOHLMAN, LLC**
Commerce Center
1820 Chapel Ave. West
Suite 160
Cherry Hill, New Jersey 08002
(856) 663-9090
Attorney for:   Plaintiff

By:  Thomas J. Hagner, Esquire

---

| | |
|---|---|
| JOSEPH SIMMONS | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | |
| vs. | CIVIL ACTION NO. |
| METROPOLITAN LIFE INSURANCE COMPANY and MERRILL LYNCH & COMPANY, INC. HEALTH AND WELFARE PLAN, | **COMPLAINT** |
| Defendant, | |

Plaintiff, Joseph Simmons, by way of Complaint against Defendant, says:

1.     This is an action to redress the wrongful denial of long term disability benefits rightfully due to the Plaintiff pursuant to a certain group insurance policy issued by Life Insurance Company of North America ("LINA") of which she is a beneficiary.

## JURISDICTION AND VENUE

2.     This action is brought pursuant to Section 502(a)(1)(B) and (g)(1) of ERISA, 29 U.S.C. §1132(a)(1)(B) and (g)(1).   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §502(e)(1) of ERISA, 29 U.S.C. §1132 (e)(1).  Pursuant to §502(f) of ERISA, 29 U.S.C. §1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.    Venue is proper in this District pursuant to 28 U.S.C. §1391(c) in that there were sufficient contacts in this District by Defendant including the marketing, selling and issuance of the subject policy of insurance as well as frequent contacts with the Plaintiff herein.

## PARTIES

4.    Joseph Simmons is an individual residing at 208 Jerome Avenue, South Bound Brook, NJ   08880.

5.    Plaintiff is a participant in the health and welfare plan offered by his employer, Merrill Lynch & Company, Inc.

6.    The Plan at all times pertinent hereto was both administered and underwritten by Metropolitan Life Insurance Company which is a corporation engaged in the marketing, selling and issuance of insurance policies in the State of New Jersey.

## FACTUAL BACKGROUND

7.    Plaintiff was employed by Merrill Lynch & Company, Inc. as a Visa Fraud Analyst until his last day of work on or about September 16, 2009.

8.    Plaintiff applied for long term disability benefits and his application was denied on March 8, 2010.

9.    Pursuant to the Plan/Policy an employee is considered totally disabled if he or she is unable to perform all of the material duties of his or her regular occupation and other the appropriate care and treatment of a doctor operating within the scope of his or her specialty.

10.    In response to the termination of benefits the Plaintiff submitted an appeal, which was denied by letter dated June 11, 2010 and June 14, 2010.

2

11.     Mr. Simmons submitted an application for long term disability benefits dated December 9, 2009 in which he indicated the following physical/psychiatric/ psychological limitations:   Severe chronic back/neck pain; Stress/anxiety due to pain; and inability to function.

12.     In answer to a specific question about a change in sleep habits on the long term disability application form, Mr. Simmons explained that yes his sleep habits had changed and he was unable to sleep for more than an hour or two without pain.

13.     Mr. Simmons also indicated that his activities of daily living had also changed in a number of respects including the fact that he gained 50 pounds because of his mobility limitations; stopped doing any type of housework; and that his driving became limited both due to pain and numbness in his legs as well as medication.

14.     Mr. Simmons' long term disability benefit application was supported by an Attending Physician Statement by Dr. Resnick dated December 11, 2009 indicating that Mr. Simmons had been diagnosed with a herniated disc in his cervical spine consistent with objective findings including an MRI.   Dr. Resnick limited Mr. Simmons to sitting two hours per day; that Mr. Simmons had severe neck and back pain.

15.     In support of his claim Mr. Simmons submitted a comprehensive clinical/ psychological evaluation performed by Anthony Todaro, Ph.D., a Licensed Psychologist and Director of the Hampton Counseling Center.   Dr. Todaro explained that Mr. Simmons initially came to the Hampton Counseling Center "out of sheer desperation."

16.     Dr. Todaro noted that Mr. Simmons had been involved in a serious automobile accident and "is completely traumatized from the accident and has been in

3

desperate condition since he was a very committed worker prior to the accident and then he could no longer focus or stay in any kind of work patterns."

17.     Dr. Todaro further noted in his report that Mr. Simmons "could not concentrate, he was emotionally distant and he could not move any longer.   He needed to be on Amitriptyline and Neurontin and he was very anxious about being laid off.  Mr. Simmons was found to have a non-malignant tumor in his brain, which was found to be non-cancerous, however, they feel it might grow back."

18.     Dr. Todaro's cognitive status evaluation noted:  "Affect is blunted, restricted and morose.   Mood is sad, depressed and negativistic."

19.     Dr. Todaro advised in his report that according to the Structured Clinical Interview DSM-IV (SCID), the primary diagnoses was post traumatic stress disorder.

20.     Dr. Todaro further wrote that "To complicate matters, a major depressive episode current was supported with Mr. Simmons' demonstrating decreased interest or pleasure in doing things that he used to enjoy, has gained weight, has insomnia, psychomotor agitation, fatigue and no energy, feelings of worthlessness…" Significantly, Dr. Todaro noted that Mr. Simmons "has trouble thinking and concentrating…"

21.     In his clinical/psychological evaluation of April 23, 2010 Dr. Todaro reported that all symptoms of panic disorder have been supported noting that "During an attack there has been sweating, trembling and shaking, feelings of choking, chest pain and discomfort, nausea and abdominal distress.   Feelings of unsteadiness, dizziness, lightheadedness and faintness.   De-realization and depersonalization.   A fear of 'losing control and going crazy' and fear of dying. Hot flashes and chills occurring at the same

4

time."  Dr. Todaro noted that Mr. Simmons also developed an agoraphobia type of

avoidance.   Dr. Todaro also noted Mr. Simmons' medical complications including

chronic pain from herniated discs, arthritis, and degenerative disc disease.

22.     In his report Dr. Todaro noted that "Mr. Simmons reflects definite deficits

and social attainments and despite his valiant attempts to approach work, he is incapable

of functioning either physically or cognitively.   There is no question that his profile on

the MCMI-III suggests a depressive dependency ..."

23.     In summary Dr. Todaro reported his Final Diagnostic Impressions as

follows:

AXIS I:

(1)  post traumatic stress disorder-chronic-severe;

(2)  major depression-recurrent-severe-without psychotic features;

(3)  panic disorder with a emerging agoraphobia; and

(4)  generalized anxiety disorder.


24.     Under AXIS IV Dr. Todaro noted that "Mr. Simmons feels very stressed

because he is not able to work.   This is extremely disturbing to him because he

considered himself a very capable and fine worker in the Visa Fraud Unit.

25.     Dr. Todaro noted a current Global Assessment Functioning Report (GAF)

of 35 which, according to the Diagnostic and Statistical Manuals of Mental Disorders

includes a major impairment in several areas such as work.

26.     In support of his claim of severe neck pain, Mr. Simmons submitted

objective medical evidence including an MRI dated July 29, 2009 indicating spondylitic

changes at C3-4 on the left probably producing foramenal encroachment and mass effect on the left C4 nerve root.  His neurologist, Dr. Resnick submitted a note dated March 10, 2010 indicating that Mr. Simmons was under his care due to cervical radiculopathy and herniated disc and remained out of work at that time.

27.     Dr. Resnick's February 4, 2010 progress note indicated no improvement in pain despite a prescription for Neurontin and continued insomnia.

28.     In support of his claim Mr. Simmons submitted a report which Dr. Resnick submitted to the State of New Jersey, Department of Labor and Work Force Development dated January 6, 2010 which indicated that Mr. Simmons remained disabled due to cervical radiculopathy and herniated disc and that his estimated recovery date was "uncertain."

29.     Also in support of his claim Mr. Simmons provided records from Dr. Tai, a Clinical Assistant Professor at UMDNJ on behalf of the Center for Pain Management and Rehabilitation.

30.     Dr. Tai noted chronic neck pain, possible cervical strain, bilateral lumbar radiculopathy and lumbar disc herniation at L4-L5.  Dr. Tai's October 13, 2009 notes indicated that due to severe pain "I will keep him out of work until November 15, 2009" and recommend that Mr. Simmons be seen by a neurosurgeon.

### FIRST COUNT
### ERISA

31.     Metropolitan Life Insurance Company has wrongfully failed and refused to provide Plaintiff with the benefits he is entitled to receive pursuant to the subject long-term disability policy despite Plaintiff having duly made a claim and exhausted all necessary administrative remedies.

32.     The failure of Metropolitan Life Insurance Company to provide Plaintiff with long-term disability benefits is a violation of ERISA.

33.     As a direct and proximate result of the aforesaid denial of benefits, Plaintiff has sustained, and continues to sustain, economic loss and damage.

34.     Pursuant to §502(a)(1)(b) of ERISA, 29 U.S.C. §1132(a)(1)(b), Metropolitan Life Insurance Company is obligated to provide Plaintiff with all past and future benefits that have been wrongfully denied.

35.     Pursuant to §502(g)(1) of ERISA, 29 U.S.C. §1133(g) Metropolitan Life Insurance Company is also liable to Plaintiff for reasonable attorney's fees incurred and costs of this action.

**WHEREFORE**, Plaintiff demands judgment against Defendants for reinstatement in the Long Term Disability Plan, retroactive and ongoing benefits, determining Plaintiff's right to future benefits and other attendant employee benefits together with attorney's fees, interest and costs of suit.

**HAGNER & ZOHLMAN, LLC**
Attorneys for Plaintiff

BY: _____
                Thomas J. Hagner

Dated:    November 11, 2010

7